Maria SALIM, Administratrix of the
Estate of Eric Reyes, I/O,
Plaintiff–Appellee,

v.

William PROULX, Defendant–Appellant.

No. 1373, Docket 95–7899.

United States Court of Appeals,
Second Circuit.

Argued June 5, 1996.

Decided Aug. 23, 1996.

Elliot B. Spector, Sack, Spector & Barrett, West Hartford, Conn., for defendant-appellant.

Joseph C. Morelli, Law Offices of Mark E. Salomone, Hartford, Conn., for plaintiff-appellee.

Before: NEWMAN, Chief Judge,
JACOBS and CABRANES, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal concerns a claim of qualified immunity in the context of a police officer's use of deadly force. Defendant-appellant William Proulx, an East Hartford, Conn., police officer, appeals from that portion of the August 11, 1995, order of the District Court for the District of Connecticut (Dominic J. Squatrito, Judge) that denied his motion for summary judgment on the ground of qualified immunity. Plaintiff-appellee Maria Salim, administratrix of the estate of her son, Eric Reyes, brought federal and state claims against the Town of East Hartford, Chief of Police James Shay, and Officer Proulx for Proulx's action in fatally shooting Eric during an attempt to arrest him.

However regrettable the death of Eric Reyes, we conclude that Officer Proulx is entitled, as a matter of law, to the defense of qualified immunity. Since the federal claim must be dismissed at the threshold, it would be inappropriate to exercise supplemental jurisdiction over the plaintiff's state law claims. We therefore reverse and remand with directions to dismiss the complaint as to Officer Proulx.

## Facts

For purposes of this appeal, Officer Proulx has stipulated to the facts as set forth by plaintiff. Our account of the unfortunate episode that took the life of Eric Reyes is taken from plaintiff's version of the facts as detailed in her Rule 9(c) Statement of Facts.

*See* D. Conn. Local R. Civ. P. 9(c). In February 1992, Officer Proulx, while working in plainclothes serving arrest warrants, attempted to locate and apprehend Eric Reyes, aged 14, who had escaped from a juvenile detention center a few weeks earlier and had already twice eluded capture by the East Hartford police. Proulx locked his service revolver and radio in the trunk of his car, and armed himself only with his personal .22 caliber handgun. He carried no handcuffs or other disabling devices.

Proulx located Eric standing near his home. Eric ran away, and the officer pursued. Eric threw a rock at Proulx, which struck him in the arm and ricocheted off his forehead. Proulx believed Eric had a knife and fired a warning shot to force him to retreat. In fact, Eric was unarmed. Eventually Proulx caught Eric, and they fell to the ground struggling. The officer's gun was in his pocket. After Proulx had pinned Eric to the ground, a group of five or six children between the ages of eight and twelve, including Eric's brother Ricardo and sister Janicette, arrived on the scene. These children began to hit and kick Officer Proulx in order to free Eric.[1]

Eventually, Proulx's gun was taken out of his pocket, and Eric was fatally shot. Plaintiff's 9(c) Statement asserts that Officer Proulx pulled the gun from his pocket during the fight and pointed it at the children.[2] The 9(c) Statement then sets forth the following critical circumstances under which the officer fired his weapon: "During the 5 minute fight Officer Proulx saw the barrel of his gun in Eric's hand and he instinctively grabbed the handle and pulled the trigger." Plaintiff's 9(c) Statement.[3]

Magistrate Judge Thomas P. Smith recommended denying Officer Proulx's motion for summary judgment on the excessive force claim, stating that genuinely disputed issues of fact existed as to whether a reasonable officer could have believed that the use of deadly force against Eric comported with constitutional requirements. With respect to the state law claims, the Magistrate Judge noted that, under state law, a public official is liable for discretionary acts only when it would be apparent to the public officer that his failure to act would be likely to subject an identifiable person to imminent harm. *See Gordon v. Bridgeport Housing Authority*, 208 Conn. 161, 167, 544 A.2d 1185, 1189 (1988). The Magistrate Judge concluded that there were material issues of fact precluding summary judgment as to whether Proulx's behavior fell within this exception. The District Judge adopted the recommendation of the Magistrate Judge by endorsement order, denying Proulx's motion for summary judgment.

### Discussion

■ The gravamen of plaintiff's complaint with respect to Officer Proulx is that the officer unconstitutionally used excessive force by fatally shooting Eric or by creating a situation in which the use of deadly force was likely to occur. Although plaintiff makes this claim pursuant to a number of federal statutes and constitutional amendments, the

---

1. Although not specifically included in Plaintiff's 9(c) Statement, plaintiff's witness, Janicette Reyes, testified at her deposition that she obtained a stick and used it to beat Officer Proulx once her hands hurt too much to hit him any more. *See* Deposition of Janicette Reyes at 40. Eric's brother, Ricardo Reyes, testified that Eric instructed the children to "help him" and to "get" the officer's gun. *See* Deposition of Ricardo Reyes at 48, 52. The Magistrate Judge's recommended ruling also identified as an undisputed fact that "Janicette attempted to take Officer Proulx's gun away from him. Officer Proulx held his right pocket in an attempt to maintain control of the gun." Recommended Ruling on Motions for Summary Judgment dated June 22, 1995.

2. The 9(c) Statement cites the depositions of Ricardo and Janicette on this point, but their versions appear to be describing an earlier stage of the struggle in which Officer Proulx pulled his gun out of his pocket and then put it back in his pocket. *See* Deposition of Janicette Reyes at 33. Moreover, Janicette said that she was trying to get the officer's gun so that she could throw it away. *Id.* at 41. Thus, there is some uncertainty as to how the gun came out of the officer's pocket. Nevertheless, since there is no dispute that just before the fatal shooting, the gun was pointed at Eric, we will assume, for purposes of this appeal, that the officer took the gun out of his pocket and pointed it at Eric.

3. For these critical circumstances, Plaintiff's 9(c) Statement cites to Officer Proulx's deposition.

claim that a police officer used excessive force, including deadly force, is properly styled a section 1983 action and analyzed under the Fourth Amendment's reasonableness standard. *See Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989). In defense, Officer Proulx asserts qualified immunity.

A. Standards of Qualified Immunity Defense

■ The substantive standards of a qualified immunity defense are well settled. We repeat them here only to clarify the subsequent discussion of the appealability of a district court's interlocutory ruling denying an immunity defense. A qualified immunity defense is established if (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law. *See Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987); *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982); *Lennon v. Miller,* 66 F.3d 416, 420 (2d Cir.1995).

B. Appellate Jurisdiction

■ Under the collateral order doctrine, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision'...." *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). That principle is easy to apply whenever a defendant's interlocutory appeal challenges a denial of a qualified immunity defense on the ground that the district court erred in ruling that the law the defendant is alleged to have violated was clearly established. However, appealability is more difficult to determine when the district court's legal ruling involves an assessment of facts. Recent Supreme Court decisions have now made it clear that some rulings of this latter sort are appealable and others are not.

■ The fact-related ruling that is not appealable is "a district court's summary judgment order that, though entered in a 'qualified immunity' case, determines only a question of 'evidence sufficiency,' *i.e.,* which

facts a party may, or may not, be able to prove at trial." *Johnson v. Jones,* — U.S. —, —, 115 S.Ct. 2151, 2156, 132 L.Ed.2d 238 (1995). As later phrased in *Behrens v. Pelletier,* — U.S. —, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), "[D]eterminations of evidentiary sufficiency at summary judgment are not immediately appealable ... if what is at issue in the sufficiency determination is nothing more than whether the evidence could support a finding that particular conduct occurred...." *Id.* at —, 116 S.Ct. at 842.

Though it was arguable that *Johnson* intended to preclude an interlocutory appeal whenever a district judge denied summary judgment on the ground that a material fact was genuinely in dispute, the Court's subsequent decision in *Behrens* dispelled such a notion. In *Behrens,* the District Court had denied summary judgment precisely on the ground that a disputed issue of fact existed, *id.* at —, 116 S.Ct. at 838, yet an appeal was not precluded, *id.* at —, 116 S.Ct. at 842. Thus, *Behrens* laid to rest any possibility that a district court's mere assertion that disputed factual issues existed was enough to preclude an immediate appeal.

After *Johnson* and *Behrens,* several types of fact-related rulings remain appealable. The clearest example is where the defendant appeals the denial of an immunity defense on the ground that, on stipulated facts, the defense is established as a matter of law. Similarly, an appeal is available where the defendant accepts, for purposes of the appeal, the facts as alleged by the plaintiff. *See, e.g., Jemmott v. Coughlin,* 85 F.3d 61, 66 (2d Cir.1996). Indeed, *Behrens* goes further and permits an appeal where a defendant contends that the immunity defense is established on those facts, alleged by the plaintiff, that the district court ruled were sufficiently supported to create jury issues. As *Behrens* explained, "*Johnson* permits petitioner to claim on appeal that all of the conduct which the District Court deemed sufficiently supported for purposes of summary judgment met the *Harlow* standard of 'objective legal reasonableness.'" *Behrens,* — U.S. at —, 116 S.Ct. at 842. Even if the district court did not identify the particular charged

conduct that it deemed adequately supported, *Johnson* permits an appeal, though it acknowledges that a "a court of appeals may have to undertake a cumbersome review of the record to determine what facts the district court, in the light most favorable to the nonmoving party, likely assumed." *Johnson*, — U.S. at —, 115 S.Ct. at 2159; *Behrens*, — U.S. at —, 116 S.Ct. at 842. Presumably, that burden would end as soon as the appellate court identified any evidence, regardless of probative force, that put in issue the defendant's claim as to undisputed facts.

Thus, as long as the defendant can support an immunity defense on stipulated facts, facts accepted for purposes of the appeal, or the plaintiff's version of the facts that the district judge deemed available for jury resolution, an interlocutory appeal is available to assert that an immunity defense is established as a matter of law. Usually, the fact-related issue that will be raised on an interlocutory appeal is whether it was reasonable for the defendant to believe that his action did not violate clearly established law. *See, e.g., Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039–40; *Robison v. Via*, 821 F.2d 913, 921 (2d Cir.1987). In addition, *Johnson* permits an appeal even on the fact-related issue of whether the defendant acted in the manner alleged by the plaintiff. Some might have thought that a defendant's claim that he "didn't do it" relates to the merits of the plaintiff's claim, not to the defendant's qualified immunity defense to that claim. However, the Supreme Court made clear in *Johnson* that it regards a defendant's denial that he took the action alleged by the defendant to be within the scope of an immunity defense. *Johnson* itself involved precisely that type of dispute; the Court described that case as "the simple 'we didn't do it' case." *Johnson*, — U.S. at —, 115 S.Ct. at 2158. Yet the Court used a case involving that type

of dispute to articulate the ground rules for an appeal of a ruling rejecting an immunity defense.[4]

Evidently, the Supreme Court regards a defendant's claim that he "didn't do it" as within the scope of the qualified immunity defense on the theory that a defendant who did not take the action alleged by the plaintiff did not violate any clearly established law prohibiting such action. In most cases where the defendant contends that he did not violate clearly established law, the disputed issue is whether the pertinent law was clearly established. But *Johnson* informs us that the issue may also be whether the defendant took the alleged action at all.

■ To summarize, whether the defendant claims that he "didn't do it," or that it was objectively reasonable to believe that his action did not violate clearly established law, *Johnson* and *Behrens* instruct that a denial of the immunity defense is not subject to interlocutory appeal to challenge a trial judge's rejection of a defendant's contention that the plaintiff's evidence is insufficient to create a jury issue as to either of the defendant's claims. That ruling would involve a "question of 'evidence sufficiency,'" *Johnson*, — U.S. at —, 115 S.Ct. at 2156, on which a district court's ruling is not immediately appealable. An appeal is available, however, to challenge the trial judge's rejection of the immunity defense where the defendant contends that on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find, the immunity defense is established as a matter of law because those facts show either that he "didn't do it" or that it was objectively reasonable for him to believe that his action

4. Further indication that a dispute as to whether the defendant took the action alleged by the plaintiff is within the scope of the immunity defense is found in then-Judge Breyer's dissenting opinion in *Unwin v. Campbell*, 863 F.2d 124, 137 (1st Cir.1988). Judge Breyer disagreed with the First Circuit's view, at the time, that an interlocutory appeal was generally available to review a district court's ruling that a genuine issue of material fact exists as to the factual predicate of a qualified immunity defense. He expressed the view that he would later articulate

when writing the Supreme Court's opinion in *Johnson*. Significantly, in his *Unwin* dissent, Judge Breyer characterized a trial court's ruling that a dispute exists as to whether the defendant committed the act alleged by the plaintiff as a determination that is "relevant to (indeed, determinative of) his 'qualified immunity' defense." *Id.* at 137. The premise of both his *Unwin* dissent and his majority opinion in *Johnson* is that a defendant's claim that he "didn't do it" is within the scope of an immunity defense.

did not violate clearly established law. What we may not do, after *Johnson* and *Behrens,* is entertain an interlocutory appeal in which a defendant contends that the district court committed an error of law in ruling that the plaintiff's evidence was sufficient to create a jury issue on the facts relevant to the defendant's immunity defense.

■ The pending appeal easily satisfies the standard for appealability in the aftermath of both *Johnson* and *Behrens.* Officer Proulx's claim is that the undisputed facts set forth in plaintiff's own 9(c) Statement entitle him to the defense of qualified immunity as a matter of law. Our appellate jurisdiction is not defeated by the Magistrate Judge's conclusion, adopted by the District Court, that material facts were in dispute. The Magistrate Judge apparently reached that conclusion by regarding Proulx's deposition testimony about the circumstances at the moment he fired his weapon as being *only the officer's version.* However, Plaintiff's 9(c) Statement makes clear that this account of the critical circumstances is also *plaintiff's version.* We confirmed that understanding at oral argument. Thus, we are not asked to assess whether plaintiff's evidence is sufficient to create a jury issue. We need to determine only whether, on plaintiff's version, an immunity defense is established as a matter of law.

### C. Merits of Qualified Immunity Defense

The right to be free of excessive force is clearly established. *See Lennon,* 66 F.3d at 423. That there are constitutional limitations on the use of deadly force during the course of an arrest is also clearly established. *See Graham,* 490 U.S. at 395–96, 109 S.Ct. at 1871–72 (citing *Tennessee v. Garner,* 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)). Therefore, in the circumstances of this case, Officer Proulx's entitlement to qualified immunity depends on an assessment of the objective reasonableness of the belief that his conduct did not violate Eric's right to be free of excessive force.

■ At the moment when Officer Proulx used deadly force against Eric, it was objectively reasonable for the officer to view the use of deadly force as not excessive in the circumstances presented to him. The objective reasonableness test is met if "officers of reasonable competence could disagree" on the legality of the defendant's actions. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). The Supreme Court has made it clear that an officer's actions are not to be assessed with 20/20 hindsight. Rather, "qualified immunity serves to protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances." *Lennon,* 66 F.3d at 424.

■ In determining whether the force used to effect a particular seizure is reasonable, a court must examine "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396, 109 S.Ct. at 1872 (citing *Garner,* 471 U.S. at 8–9, 105 S.Ct. at 1699–1700). In the circumstances of this case, the "immediate threat" criterion controls the outcome of this Court's evaluation. Although plaintiff attempts to characterize the situation as one in which an officer unreasonably used deadly force to complete an arrest or to prevent the escape of a nonfelon, *see, e.g., Garner,* 471 U.S. at 11–12, 105 S.Ct. at 1701–02 (restricting circumstances in which police may employ deadly force in apprehending fleeing felons), this case is more properly viewed as one in which an officer used deadly force in self-defense. *See Fraire v. City of Arlington,* 957 F.2d 1268, 1274–75 (5th Cir.), *cert. denied,* 506 U.S. 973, 113 S.Ct. 462, 121 L.Ed.2d 371 (1992); *Garcia v. United States,* 826 F.2d 806, 812 (9th Cir.1987).

■ On the facts admitted in Plaintiff's 9(c) Statement, at the moment Officer Proulx fired his weapon, Eric was actively resisting arrest, and Proulx was being pummelled by more than five people. The police officer subsequently shot Eric "instinctively" in reaction to seeing Eric's hand on the barrel of his gun while the two were locked in a struggle. Thus, on *plaintiff's version,* Proulx shot

Eric in the midst of a struggle when the possibility that Eric might gain control of the officer's weapon was imminent, a prospect with obvious danger for Proulx. In such circumstances, no rational jury could find that Officer Proulx's decision to use deadly force "was so flawed that no reasonable officer would have made a similar choice." *Lennon*, 66 F.3d at 425.

 Plaintiff additionally contends that Officer Proulx is liable for using excessive force because he created a situation in which the use of deadly force became necessary. Plaintiff faults Proulx for various violations of police procedure, such as failing to carry a radio or call for back-up, and also for failing to disengage when the other children entered the fray. However, Officer Proulx's actions leading up to the shooting are irrelevant to the objective reasonableness of his conduct at the moment he decided to employ deadly force. The reasonableness inquiry depends only upon the officer's knowledge of circumstances immediately prior to and at the moment that he made the split-second decision to employ deadly force. *See Schulz v. Long*, 44 F.3d 643, 649 (8th Cir.1995) ("[E]vidence that [the officers] created the need to use [deadly] force by their actions prior to the moment of seizure is irrelevant....."); *Fraire*, 957 F.2d at 1275–76 (same); *Carter v. Buscher*, 973 F.2d 1328, 1332 (7th Cir.1992) (same); *Greenidge v. Ruffin*, 927 F.2d 789, 792 (4th Cir.1991) (same). At the moment Officer Proulx employed deadly force against Eric, it was objectively reasonable for him to believe that his actions did not violate Eric's constitutional rights.[5] Furthermore, even if plaintiff conclusively established that Officer Proulx acted negligently, an issue on which we express no opinion, a claim that a state actor acted negligently does not state a deprivation of constitutional rights. *See Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986); *Davidson v.*

*Cannon*, 474 U.S. 344, 348, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986).

We therefore reverse the District Court's denial of Officer Proulx's motion for summary judgment on his defense of qualified immunity to the federal claim. Since the federal claim against Officer Proulx must be dismissed, we also direct dismissal of the state claims for negligence and assault and battery, pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). *See, e.g., Lennon*, 66 F.3d at 426; *Rodriguez v. Phillips*, 66 F.3d 470, 482–83 (2d Cir.1995).

### Conclusion

We reverse and remand to the District Court with instructions to dismiss the complaint as to Officer Proulx.

---

**5.** Additionally, with respect to plaintiff's contention that Officer Proulx should have released Eric when the other children tried to free him, plaintiff points to no case law clearly establishing that Eric had a right to have an officer disengage in response to resistance to arrest. *Cf. Reed v. Hoy*, 909 F.2d 324, 330–31 (9th Cir.1989, as amended 1990) (declining to impose duty to re-

treat on police officers); *Garcia*, 826 F.2d at 812 (declining to impose liability on officer who, in attempting to arrest juvenile non-felon, used deadly force against bystander who attacked officer in order to free juvenile). Moreover, it was objectively reasonable for Officer Proulx to believe that he could lawfully attempt to ward off the children and complete the arrest.