Lori L. GUBITOSI, Plaintiff–Appellee,

v.

John A. KAPICA, individually and in his capacity as Chief of Police of the Town of Greenburgh, N.Y. Defendant–Appellant,

The Town Board of the Town of Greenburgh, N.Y., The Board of Police Commissioners of the Town of Greenburgh, N.Y., and the Town of Greenburgh, N.Y. Defendants.

Docket No. 97–7682.

United States Court of Appeals, Second Circuit.

Argued June 5, 1998.

Decided Aug. 19, 1998.

Louis G. Corsi, Landman Corsi Ballaine & Ford P.C., New York City (Lisa S. Rabinowitz, on the brief), for Defendant–Appellant.

Kenneth J. Aronson, New York City, for Plaintiff–Appellee.

Before: OAKES, MESKILL, and CABRANES, Circuit Judges.

PER CURIAM:

Defendant John A. Kapica, Police Chief of the Town of Greenburgh, New York ("defendant" or "Kapica"), appeals from that portion of an order entered by the United States District Court for the Southern District of New York (Barrington D. Parker, Jr., *Judge* ) on May 9, 1997, holding that he is not entitled to qualified immunity on plaintiff's First Amendment retaliation claim. Kapica argues that plaintiff's allegations of retaliation are conclusory and unsupported by the evidence. We agree, and vacate that portion of the district court's order that denied Kapica's claim of qualified immunity.

### I.

Our review of the record reveals the following facts, viewed in the light most favorable to the plaintiff.[1] *See Salim v. Proulx,* 93 F.3d 86, 90 (2d Cir.1996) (citing *Johnson v. Jones,* 515 U.S. 304, 318–19, 115 S.Ct.

2151, 132 L.Ed.2d 238 (1995)). Plaintiff Lori Gubitosi, a police officer employed by the Town of Greenburgh, is a lesbian whose sexual orientation received press coverage in the local newspaper, allegedly due to leaks by town officials. Thereafter, she became concerned about performing strip searches on female prisoners, fearing charges of improper sexual conduct or a civil rights suit. On May 31, 1994, she refused to obey her superior officer's order to perform a strip search of a female prisoner, and as a result, on June 15, 1994, she agreed to the imposition of an administrative penalty of forfeiting five days' pay, voluntarily waiving her right to a disciplinary hearing.

On May 29, 1994 and on June 17, 1994, plaintiff received two separate personnel evaluation reports criticizing her job performance. In response, she submitted two memoranda objecting to various police practices, both of which were received by the police department on June 28, 1994.[2]

On July 22, 1994, plaintiff was again ordered by a superior officer to strip search three female detainees. She reported to her superior that she had done so, but a subsequent search revealed contraband in the brassiere of one of the detainees. Plaintiff's supervisor reported what had transpired to Chief Kapica, who obtained written statements from other police officers and from the three female detainees, who confirmed they had not been strip searched by Gubitosi.

The following day, plaintiff was interviewed by Kapica, and again maintained—both in the interview and in a written statement—that she had indeed strip searched the women. As a result of Kapica's investigation, plaintiff was suspended pending disci-

---

1. Kapica asserts that, because plaintiff failed to respond to his Local Rule 3(g) statement, the material facts contained in his statement are deemed to be admitted as a matter of law. This is so. *See* Local Civil Rule 56.1(c) (former Local Civil Rule 3(g)), Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."); *see also Dusanenko v. Maloney,* 726 F.2d 82, 84 (2d Cir. 1984). We accept as true the material facts

contained in defendants' Local Rule 3(g) statement because plaintiff failed to file a response. *See Dusanenko,* 726 F.2d at 84.

2. Some of the alleged practices criticized by Gubitosi included (1) attendance at "bagel parties" when officers should be performing patrolling duties; (2) attendance at birthday parties when officers should be performing police work at their assigned posts; (3) abandonment of patrol duties to take extended breaks at firehouses; and (4) drinking and using obscene language after hours.

plinary charges, and subsequently six charges were brought against her, including disobedience of an order, failure to perform a duty, and knowingly making a false report. Disciplinary hearings took place between December 1994 and June 1995 under the Westchester County Police Act §§ 7, 8, 1936 N.Y. Laws ch. 104, as amended by 1941 N.Y. Laws ch. 812, the transcript of which numbers over eight hundred pages. Plaintiff attended all eight sessions of the disciplinary hearing and was represented by an attorney, but she did not testify.

▮ Plaintiff was found guilty of the charges on July 11, 1995 and was fired on September 8, 1995. She thereafter commenced the instant 42 U.S.C. § 1983 action against Kapica and three Greenburgh municipal entities in the district court, alleging, *inter alia*, violations of her constitutional rights to free speech (because she alleged, she was fired in retaliation for her criticisms of police practices) and due process of law. On December 24, 1996, all defendants moved for summary judgment and the district judge referred the matter to a magistrate judge. The March 12, 1997 report of the magistrate judge recommended, *inter alia*, that the district court hold that Kapica was *not* entitled to qualified immunity with respect to plaintiff's First Amendment claims. The district court's order adopted the report and recommendations of the magistrate judge in all respects.[3] We consider here only the issue

of Kapica's qualified immunity with respect to plaintiff's First Amendment retaliation claims.

## II.

▮ We assume jurisdiction of this interlocutory qualified immunity appeal under the collateral order doctrine, *see Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), "on the fact-related issue of whether the defendant acted in the manner alleged by the plaintiff," *Salim*, 93 F.3d at 90, because "a defendant who did not take the action alleged by the plaintiff did not violate any clearly established law prohibiting such action," *id.* As we observed in *Salim,*

> an appeal is available ... [from] a rejection of the immunity defense where the defendant contends that on stipulated facts, or on the facts that the plaintiff alleges are true, or on the facts favorable to the plaintiff that the trial judge concluded the jury might find, the immunity defense is established as a matter of law because those facts show ... that he "didn't do it."

*Id.* at 90. Furthermore, even where the district court did not directly identify particular facts favorable to the plaintiff that a jury might find, we will identify such facts ourselves upon a "cumbersome review of the record," *id.* at 89–90 (citing and quoting *Johnson*, 515 U.S. at 319, 115 S.Ct. 2151 and

---

3. The magistrate judge's report also recommended that the district court (1) deny the motion of Kapica and the municipal defendants for summary judgment based on the *Rooker–Feldman* doctrine, *see District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and collateral estoppel; (2) hold that Kapica is entitled to qualified immunity in connection with plaintiff's due process claims; (3) hold that plaintiff does not have standing to assert claims on behalf of the three female detainees; and (4) grant the Town of Greenburgh's motion for summary judgment with respect to all claims against it. Kapica appeals in particular those portions of the order pertaining to the *Rooker–Feldman* doctrine, collateral estoppel, and his qualified immunity with respect to plaintiff's First Amendment claims.

We decline Kapica's request that we assume pendent appellate jurisdiction of his appeal of

those portions of the district court's order that denied defendants' motion for summary judgment based on the *Rooker–Feldman* doctrine and collateral estoppel. Those portions of the order are not, in our view, "inextricably intertwined with [the district] court's decision to deny [defendant's] qualified immunity motion[]," nor is a review of the issues pertaining to the *Rooker–Feldman* doctrine and collateral estoppel "necessary to ensure meaningful review" of the denial of qualified immunity. *Swint v. Chambers County Comm'n,* 514 U.S. 35, 51, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995). No "sufficient overlap" exists in the factors relevant to the qualified immunity defense and the *Rooker–Feldman* doctrine/collateral estoppel issues "to warrant our exercising plenary authority" over the latter on this interlocutory appeal. *McEvoy v. Spencer,* 124 F.3d 92, 96 (2d Cir.1997) (quoting *San Filippo v. United States Trust Co.,* 737 F.2d 246, 255 (2d Cir.1984)).

*Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996)), and proceed to consider whether the qualified immunity defense is established as a matter of law.[4] Here the gravamen of Kapica's qualified immunity defense (and this appeal) is that he lodged the charges against plaintiff because of her insubordination, not because of her complaints regarding police practices, and that plaintiff has offered no affirmative evidence to counter this assertion that he "didn't do it"—that is, that he "didn't retaliate."

Having reviewed the record for allegations favorable to plaintiff that were sufficiently supported to create jury issues,[5] *see Salim*, 93 F.3d at 89–90, and having assumed those allegations to be true, we have nevertheless failed to identify "affirmative evidence from which a jury could find" that plaintiff has carried her burden of showing that Kapica engaged in retaliation. *Crawford–El v. Britton*, —— U.S. ——, ——, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 759 (1998) ("At [the summary judgment] stage, ... plaintiff may not respond simply with general attacks upon the defendant's credibility...."). Plaintiff argues that the short period of time between the date she submitted her criticisms of police procedures and the date she was terminated constitutes evidence of retaliation. However, in reviewing the record, it is simply impossible to miss the significant intervening events between these two dates, events corroborated by written statements and testimony given by fellow police officers and the three female detainees: plaintiff dis-

obeyed the order to perform the strip searches, lied about it in the post-offense interview, and gave a false written statement about it.

In the circumstances here presented, the total absence of evidence of retaliation offered by plaintiff is fatal to her case. Even if we assume all the facts in the record that support plaintiff's allegations and "that the trial judge [would have] concluded the jury might find" in her favor, *see Salim*, 93 F.3d at 90, we believe a rational jury would be required to conclude that those facts show that plaintiff was fired based on the strip search incident—not in retaliation for the exercise of her First Amendment rights. *See id.* Because plaintiff failed to identify evidence in the record from which a jury could find that Kapica engaged in retaliation, she failed (by definition) to show that he violated clearly established law against retaliation; or to show that it would not have been objectively reasonable for him to believe that he did not violate the law. *See id.* Kapica is thus entitled to qualified immunity with respect to plaintiff's First Amendment claims.

### III.

To summarize:

(1) Even if we assume all the facts in the record "that the trial judge [would have] concluded the jury might find" in plaintiff's favor, *see Salim*, 93 F.3d at 90, we conclude that plaintiff has failed to identify affirmative evidence showing that Kapica retaliated against her for the exercise of her First

---

4. Kapica has neither stipulated to nor assumed facts favorable to the plaintiff for purposes of this appeal. Similarly, the district court did not directly identify issues of material fact that a jury might find in plaintiff's favor. Its summary judgment ruling referred only to the facts set forth in its earlier opinion denying a motion to dismiss, *Gubitosi v. Kapica*, 895 F.Supp. 58, 59–60 (S.D.N.Y.1995), and because in that earlier posture the district court had been constrained to accept *all* of plaintiff's allegations as true, it is impossible to deduce precisely which of those allegations the district court (in the summary judgment posture) concluded were sufficiently supported that a jury would be entitled to find them in plaintiff's favor. Accordingly, we have undertaken the "cumbersome review of the record" directed by the Supreme Court, *Salim*, 93 F.3d at 90–91 (quoting *Johnson*, 515 U.S. at 319,

115 S.Ct. 2151), to identify the allegations favorable to plaintiff that the district court was likely to have concluded "were sufficiently supported to create jury issues," *id.* at 89–90.

5. Accepting the material facts contained in defendant's Local Rule 3(g) statement as true, as we must, *see supra* note 1, we note that plaintiff has thus admitted that she was *suspended* by the Town Board pending a hearing "as a result of Chief Kapica's investigation" into the strip search incident. However, defendant's Rule 3(g) statement stops short of actually asserting that plaintiff was *fired* due to the strip search incident rather than due to retaliation. It states only that the *Board found* that plaintiff was fired due to the strip search incident rather than due to retaliation.

Amendment rights. As a result, his qualified immunity defense is established as a matter of law.

(2) Accordingly, we vacate so much of the district court's order of May 9, 1997 as denied Kapica's motion for summary judgment based on qualified immunity regarding plaintiff's First Amendment claims.

(3) We decline to assume pendent appellate jurisdiction of those portions of the district court's order that denied summary judgment based on the *Rooker–Feldman* doctrine and collateral estoppel.

(4) We remand for further proceedings consistent with this opinion.

No costs.