Lorraine SANTANA, Conservatrix,
et al, Plaintiffs,

v.

CITY OF HARTFORD,
et al, Defendants.

No. CIVA3–01–CV–899(JCH).

United States District Court,
D. Connecticut.

Sept. 19, 2003.

Nicholas P. Cardwell, Cardwell, Cardwell & Smoragiewicz, Hartford, CT, for Plaintiffs.

Brian P. Leaming, Halloran & Sage, Hartford, CT, for Defendants.

**RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**[Dkt. No. 33]**

HALL, District Judge.

Lorraine Santana and Crystal Santana ("plaintiffs") bring this action in their capacities as conservatrix of the person and estate, respectively, of David Lowell ("Lowell"). In addition, Lorraine Santana ("Santana") brings claims in her individual capacity. The Santanas seek relief from the City of Hartford ("Hartford"), Acting Police Chief Robert Rudewicz ("Rudewicz"), and Hartford Police Officers Jeff Rohan ("Rohan") and Ursula Musgrave ("Musgrave"), for damages arising out of Rohan's shooting of Lowell on October 16, 2000, at Lorraine Santana's residence. The plaintiffs allege claims under 42 U.S.C. § 1983 against officers Rohan (Count 1) and Musgrave (Count 3), Rudew-

icz (Counts 5, 7), and Hartford (Counts 6, 8).

The defendants move for summary judgment, claiming that plaintiffs have failed to state claims against Hartford and Rudewicz on which relief can be granted; that there are no issues of material fact; and that in any case, defendants Rohan, Musgrave, and Rudewicz are entitled to qualified immunity. For the reasons that follow, the court grants the motion for summary judgment.

## I. BACKGROUND

The plaintiffs allege that on October 16, 2000, Lorraine Santana called the Hartford Police Department because of the behavior of her brother, David Lowell. According to the 911 transcript, when the 911 operator asked for the reason for the emergency call, Lorraine Santana explained, "My brother, he he's like going crazy, he just put a window, a board through my window. He's he's he's not all there in his head anyway." (Pls' Opp. to Def. Mot for Summ. J., Ex A at 1). Santana continued, "he's getting ready to take off on his bike and he needs to be committed somewhere and I don't know what to do—to go about doing it. If he gets arrested or whatever." *Id.* at 2. Santana repeated, "he has a brain injury and he's just the last few days he's really been going crazy." *Id.*

The police department dispatched Officers Rohan and Musgrave to the scene. When the officers arrived at Santana's first floor apartment, she explained to them that Lowell had refused to take his diabetes medication and had become "frustrated" with her when she insisted that he take it. Earlier, he had thrown a board through her window and was now upstairs in the second floor apartment where he lived.

Santana led the officers through her apartment and to the enclosed stairway leading to the second floor. Officer Rohan climbed the stairway and found Lowell, a man of about 5'10" to 6' in height, weighing around 300 pounds. Lowell was holding his bike and was wearing an 8.5" knife tied in a sling around his chest and waist. In her affidavit, Santana explains that Lowell used the knife, and a pair of plyers and a vicegrips (which Santana says were also in the sling) for working on his bike.

Santana, who appears to have stayed on the first floor, heard Rohan repeatedly order Lowell to put the knife down. Worried that the situation might escalate, she yelled, "don't shoot my brother," until Musgrave ordered her back into her apartment.

Officer Rohan then backed down the stairs while Lowell, the knife still strapped to his chest, followed with his bike. Rohan informed Musgrave that Lowell was descending the stairs. Rohan continued to order Lowell to put down the knife, but Lowell did not obey the order.

Both officers exited the building into the rear parking lot, and they stayed close to the building. Rohan exited to the left of the door, and Musgrave exited to the right. Both cleared the doorway. Lowell then emerged from the house, still carrying his bike. By the left side of the house was a picnic table.

The parties dispute what happened next. The defendants claim that Lowell walked about five feet from the door, and then dropped his bike, pulling the knife from the strap with his right hand and charging Rohan. When Lowell was "two or three steps" away, Rohan fired two shots, which missed, then another four shots, continuing to shoot until Lowell dropped the knife and fell to the ground. Musgrave did not discharge her gun.

Because Santana was inside the house, she could not see what transpired. In her affidavit, she says that shortly after she was ordered back into her apartment, she heard numerous gunshots. She further states that she believes that Lowell was not charging Rohan, but instead was attempting to put the knife on the picnic table in the corner of the yard.

The plaintiffs argue that Rohan's use of force was not reasonable. They contend that Lowell was much further from Rohan than five feet, because Rohan could not have fired six shots had Lowell only been five feet away. They further argue that the inference that Rohan acted unreasonably is supported by the fact that Musgrave did not discharge her gun.

## II. DISCUSSION

### A. Standard

In evaluating the defendants' motion for summary judgment, including their claims of qualified immunity, the court must construe all facts and draw all reasonable inferences in the plaintiffs' favor. *See Poe v. Leonard*, 282 F.3d 123, 126 (2d Cir. 2002). In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir.2002). The burden of showing that no genuine factual dispute exists rests upon the moving party. *Marvel Characters Inc.*, 310 F.3d at 286. Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505, and present such evidence that would allow a jury to

find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Lucente v. Int'l Business Machines Corp.*, 310 F.3d 243, 253 (2d Cir.2002). "Summary judgment is improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Lucente*, 310 F.3d at 254. The court thus accepts the plaintiffs' version of all disputed facts in considering this motion for summary judgment.

The plaintiffs, however, cannot escape summary judgment merely by asserting that unspecified disputed material facts exist or through conjecture or speculation. *Harlen Assocs. v. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir.2001). If little or no evidence supports the non-moving party's case, there is no genuine issue of material fact and summary judgment may be appropriate. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir.1994). Disputed facts that are not material to the issues in the case may not defeat summary judgment. *Hemphill v. Schott*, 141 F.3d 412, 416 (2d Cir.1998). *See also Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505 (the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact").

## B. Rohan's Use Of Force Against Lowell

Plaintiffs allege that Officer Rohan "used excessive force" against Lowell, "when such force was not necessary and/or reasonable under the circumstances." [1] Plaintiffs further allege the Rohan "failed to follow normal and accepted police practices, procedures, regulations, and/or guidelines in investigating circumstances then and there existing" at the time of the shooting of Lowell, and "failed to exercise reasonable care." Plaintiffs allege that Rohan's conduct resulted in physical, psychological and emotional injury; deprived Lowell of the ability to carry out life's normal activities; required Lowell to incur large medical bills; and resulted in Lowell's arrest, and the costs of his defense.

The plaintiffs argue that these excessive force allegations invoke the Fourth Amendment. The Supreme Court has explained that, "when, as here, the excessive force claims arise in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). *See also Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) (there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment).

█ Determining whether the force used to affect a particular seizure is "reasonable" under the Fourth Amendment requires a "careful balancing of the nature and quality of the individual's Fourth

---

**1.** Count 1 of the Third Amended Complaint alleges excessive force by Rohan, and Count 2 alleges that Musgrave "acquiesced" in the excessive force. While the plaintiffs do not explicitly invoke the Constitution or Section 1983 in those counts, they argue in their response that "excessive force" invokes the Fourth Amendment and is cognizable as a Section 1983 claim. The court accordingly analyzes their complaint as alleging constitutional torts against the officers.

Amendment interest against the counter-vailing governmental interests at stake." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. Reasonableness is judged from the per-spective of a "reasonable officer on the scene," not in hindsight. *Id.* It depends on factors specific to each particular case, like (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or oth-ers, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight. *Id.* at 397, 109 S.Ct. 1865. In the circumstances of this case, which involves whether an officer used excessive force in self-defense, the "immediate threat" crite-rion controls the court's evaluation. *Salim v. Proulx*, 93 F.3d 86, 91 (2d Cir.1996).

■ As an initial matter, plaintiffs' argument that Rohan and Musgrave, through poor handling of the situation, provoked any violent behavior by Lowell is unavailing. The reasonableness of the use of force is determined "in the mo-ment." *See Graham*, 490 U.S. at 396, 109 S.Ct. 1865; *Salim*, 93 F.3d at 91–92. "If the suspect threatens the officer with a weapon ... deadly force may be used if necessary to prevent escape, and if, where feasible, some warning has been given." *Garner*, 471 U.S. at 12–13, 105 S.Ct. 1694.

The plaintiffs' response advances three additional arguments: first, Santana's speculation that when Lowell drew his knife, he was actually attempting to put the knife on the picnic table; second, that Musgrave's failure to discharge her weap-on supports the inference that Rohan's use of force was unreasonable; and finally, that Lowell had to have been further than five feet from Rohan in order for Rohan to have discharged his gun six times. The court considers these arguments in turn.

■ First, Santana suggests that, when Lowell withdrew the knife from the sheath, he intended to lay it on the picnic table. This contention, however, is pure speculation. Lorraine Santana heard shouts to put down the knife, and then heard the shots, but did not witness any of what occurred. Lowell is not competent, so plaintiffs can offer nothing of his ver-sion of events. In fact, the officers are the only witnesses to what transpired in the backyard. There are no witnesses who can contradict the officers' testimony that Lowell charged Rohan with the knife. As a result, the plaintiffs' version of the events that occurred in the backyard is mere speculation, and insufficient to es-cape summary judgment. *Harlen Assocs.*, 273 F.3d at 499.

■ Plaintiffs next argue that, if Lowell were a real threat to Rohan, Musgrave would have also fired her weapon. They do not contest, however the defendants' claim that Musgrave and Rohan were on opposite sides of the doorway when Lowell exited the house. If Lowell charged Ro-han, his back would have been to Mus-grave, so that his level of threat to Rohan would be much greater. Moreover, Mus-grave testified during her deposition that she did not fire because there was a dwell-ing directly behind Rohan, so that it would have been against department policy for her to have fired her weapon. She also testified that, because she heard Rohan fire his own weapon in self-defense, it was not necessary for her to fire her own. Plaintiffs offer no evidence raising an issue of fact concerning this argument.

■ The plaintiffs' best claim is that Rohan could not have fired six shots if Lowell were within five feet of him. Plain-tiffs have advanced no expert affidavit or other testimony to support that inference, however, nor does their theory account for the fact that Rohan had already drawn his weapon before Lowell exited the house.

■ Moreover, even taking the plaintiffs' suggested inference that Lowell was actually further than five feet from Rohan, this court still cannot find that Rohan violated Lowell's Fourth Amendment rights. "It is well established that the 'use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.'" *Stephenson v. Doe*, 332 F.3d 68, 77 (2d Cir. 2003) (quoting *Saucier v. Katz*, 533 U.S. 194, 201–02, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). This objective standard allows for "split-second judgments—circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a given situation." *Graham*, 490 U.S. at 388, 109 S.Ct. 1865. It allows even for a certain degree of mistake. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151. Nor is the officer required to use the least restrictive means or least intrusive force possible, as long as the force employed is reasonable. *See, e.g., Roy v. Inhabitants of the City of Lewiston*, 42 F.3d 691, 696 (1st Cir.1994).

■ The plaintiffs must present evidence that would allow a jury to find in their favor. *Graham*, 230 F.3d at 38. They have not done so. Because Lowell is not competent to testify, and because the officers were the only witnesses to what occurred in the driveway, if this case were to proceed to trial, the plaintiffs would ask a jury to return a verdict based essentially on mere speculation. The plaintiffs must point to "evidence in the record that could reasonably support a jury's verdict" in their favor. *Lucente*, 310 F.3d at 254. When little or no evidence supports the non-moving party's case, there is no genuine issue of material fact and summary judgment may be appropriate. *Gallo*, 22 F.3d at 1223–24.

■ Here, there is no evidence on which a reasonable jury could conclude that Rohan was not reasonable in his use of force. Lowell, who Santana told the 911 operator police was "really going crazy" and needed to be committed, was wearing an 8.5″ army knife. Rohan repeatedly told him to put down the knife, and he did not. Lowell's attempt to leave the house forced the officers to back down a narrow staircase, and to exit into the yard. As even Santana concedes, Lowell was resisting the officers and attempting to leave the premises. When Lowell pulled the knife from the sling, within the confines of the driveway, and charged with it, Officer Rohan had a reasonable apprehension of an immediate safety threat.[2] The court therefore grants the motion for summary judgment on Count 1's Section 1983 claims.

## C. Section 1983 Claim Against Musgrave

■ The plaintiffs also allege

---

**2.** Even if Rohan's use of force were unreasonable, he would still be entitled to qualified immunity in any case. Whether an officer violated a victim's constitutional rights and whether that officer is entitled to qualified immunity are distinct questions. *Saucier*, 533 U.S. at 207, 121 S.Ct. 2151. Qualified immunity also turns on "reasonableness"; just as the excessive force calculation evaluates whether the force employed by the officer was reasonable, qualified immunity protect officers who use excessive force but who made a reasonable mistake as to the particular amount of force that the law allowed in a given situation. *Id.* at 204–208, 121 S.Ct. 2151. Even if the amount of force used by Rohan's was unreasonable, this court would find him to be protected by qualified immunity.

claims against Officer Musgrave.[3] While Officer Musgrave did not fire her weapon, as a police officer, she "ha[d] an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in [her] presence by other officers." *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988). Because Officer Rohan did not use excessive force, Officer Musgrave had no duty to intercede. Moreover, even if Rohan's actions had amounted to use of excessive force, it would have been reasonable for Officer Musgrave to believe that his actions were in fact lawful, entitling her to qualified immunity. *See, e.g., Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 129 (2d Cir.1997). Defendants' motion for summary judgment on Count 3's Section 1983 claim is therefore granted.

### D.  Claims Against Chief Rudewicz

The plaintiffs allege claims against Chief Rudewicz under Section 1983 for failure to supervise or train; maintaining a custom, policy, or practice of hiring and retaining officers without properly screening their propensity for violence; and for deliberate indifference to violations of constitutional rights.

In certain situations, a supervisor may be held liable under Section 1983 for a constitutional violation committed by a subordinate. Supervisory liability is predicated on one of several liability theories, including creation of an unconstitutional policy or custom, failure to act (also called deliberate indifference), and failure to train or supervise. *Johnson v. Newburgh Enlarged School Dist.,* 239 F.3d 246, 254 (2d Cir.2001).

However, in order for Rudewicz to be liable as a supervisor, plaintiffs must first establish that one of the officers committed a constitutional tort. As discussed above, Officer Rohan used reasonable constitutional force in the meaning of the Fourth Amendment. As a result, plaintiffs cannot maintain a supervisory claim against Chief Rudewicz. *Blyden v. Mancusi,* 186 F.3d 252, 265 (2d Cir.1999) ("of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional deprivation"). The court grants the defendants' motion for summary judgment on Counts 5 and 7.

### E.  Claims Against the City of Hartford

Nor can the plaintiffs maintain their Section 1983 action against Hartford. Cities may be held liable for "action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). When the plaintiff's constitutional claim is caused solely by a named individual defendant who is found not liable, the municipal government cannot be held liable. *City of Los Angeles v. Heller,* 475 U.S. 796, 798–99, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986). The Second Circuit has held that a "municipality cannot be held liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights." *Curley v. Village of Suffern,* 268 F.3d 65, 71 (2d Cir.2001), *citing Amato v. City of Saratoga Springs,* 170 F.3d 311, 320 (2d Cir.1999) ("a claim of negligent training is

---

**3.** As noted above, it is not clear that the plaintiffs' complaint alleges federal claims against the officers. Because, however, the plaintiffs' response to the defendants' motion contends that the complaint states Section 1983 counts against the officers, the court analyzes those counts under Section 1983 for the purposes of considering the defendants' motion for summary judgment. *Poe,* 282 F.3d at 126.

only actionable where some constitutional violation actually occurred").

Municipal liability for constitutional injuries may be found to exist even in the absence of individual liability when "the injuries complained of are not solely attributable to the actions of named individual defendants," but this is not such a case. *Barrett v. Orange Cty. Human Rights Comm'n*, 194 F.3d 341, 350 (2d Cir.1999). Here, plaintiffs allege that Hartford's inadequate supervision, deliberate indifference, and failure to properly train its officers resulted in Officer Rohan's use of excessive force in violation of Lowell's constitutional rights. Indeed, this case is almost identical to the situation confronted by the Supreme Court in *Heller*. There, the plaintiff also alleged excessive force in the making of an arrest, and sued both the city and two police officers, as well as the police commission; one officer was granted summary judgment by the district court, and the jury (which had not been instructed on qualified immunity) found that the other had not used unreasonable force. The district court dismissed the action against the city, concluding that if the police officer had been exonerated by the jury there could be no basis for assertion of liability against the city. The Supreme Court agreed, explaining, "this was an action for damages, and neither *Monell* ... nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." *Heller*, 475 U.S. at 799, 106 S.Ct. 1571. Since this court has concluded that, as a matter of law, Rohan's actions did not constitute excessive force in violation of Lowell's Fourth Amendment rights, Hartford cannot be held liable under Section 1983. The defendants' motion for summary judgment on Counts 6 and 8 is granted.

**F. State law claims**

The plaintiffs have also alleged state law claims of negligence and emotional distress. Because the court has granted summary judgment on the plaintiffs' federal claims, however, the court abstains from exercising jurisdiction over those claims. *See Walker v. Time Life Films, Inc.*, 784 F.2d 44, 51 (2d Cir.1986) (explaining that federal courts, absent exceptional circumstances, should abstain from exercising pendent jurisdiction when federal claims in a case can be disposed of by summary judgment).

**III. CONCLUSION**

Defendants' motion for summary judgment on the plaintiffs' federal claims pursuant to Section 1983, found in Counts 1, 3, 5, 6, 7, and 8 [Dkt. No. 33], is GRANTED. Plaintiffs' remaining state law claims are dismissed. The clerk is directed to close this case.

**SO ORDERED.**