SUMMARY ORDER
Appellants Christine Quinn and the City of New York appeal from a January 24, *572 2008, 2008 WL 199702, memorandum and order of Judge William H. Pauley, III, deciding appellants’ motion for summary judgment by granting in part as to appel-lee Viola Plummer’s federal and New York State equal protection and due process claims, and denying in part as to her First Amendment claim and qualified immunity. In this appeal, we consider the district court’s denial of qualified immunity as to Quinn, and exercise pendent jurisdiction over the district court’s denial of summary judgment as to the City of New York. See Walczyk v. Rio, 496 F.3d 139, 153 (2d Cir.2007) (“We may exercise pendent jurisdiction over ... issues that are not ordinarily subject to interlocutory review ... when ... they are ‘inextricably intertwined’ with the determination of qualified immunity.”); Demoret v. Zegarelli, 451 F.3d 140, 152 (2d Cir.2006) (“[Wjhere a municipality’s liability arises solely from the actions of an employee who is entitled to qualified immunity, we may, in our discretion, reach the liability of the municipality under the doctrine of pendent appellate jurisdiction.”). We do not exercise pendent jurisdiction over Plummer’s equal protection and due process claims. See Walczyk, 496 F.3d at 153.
We assume the parties’ familiarity with the facts, proceedings below, and the issues raised and describe the facts in limited detail, taking any disputed facts in Plummer’s favor as we must for the purposes of jurisdiction over the question of qualified immunity. See Skehan v. Vill. of Mamaroneck, 465 F.3d 96, 104-05 (2d Cir.2006), overruled on other grounds by Appel v. Spiridon, 531 F.3d 138, 140 (2d Cir.2008).
Those facts are as follows. Plummer was chief of staff for New York City coun-cilmember Charles Barron from September 2005 until mid-2007 when she was suspended and subsequently discharged by Quinn, Speaker of the New York City Council. Quinn relied on two incidents to justify the suspension and discharge, both of which related to a controversial City Council vote on co-naming four blocks in Brooklyn after the late Sonny Abubadika Carson, an African-American activist, and friend and colleague of Plummer’s.[1]
The first incident occurred on May 30, 2007, during what all agree was a raucous City Council meeting regarding the Carson street-naming proposal. Plummer admits that during this meeting and while seated in the staff section, she yelled out “that’s a lie” and “liar” when two council-members were speaking and in response to what she believed were false comments about Carson. Despite the contentious and disruptive nature of the meeting, the City Council completed its business for the day, but the Carson proposal was defeated.
The second incident occurred soon after the meeting ended when Plummer went to the edge of the plaza outside City Hall and spoke to a group of people including, as she describes it, members of her community and two reporters. At this time, Plum-mer was upset that councilmember Leroy Comrie, who represents her district, and who, she asserts, had agreed to vote for the Carson proposal, had instead abstained from voting. In her comments, Plummer sought to convey that she would seek to extinguish Comrie’s political career and defeat his anticipated run for Queens Borough President. Unfortunately, particu *573 larly given that Plummer was aware of the 2003 murder of a councilmember in City Hall, she did so using more colorful language, stating that she would seek to politically “assassinate” Comrie’s “ass.” Plum-mer acknowledges that these comments were the subject of negative press.
Upon learning of these comments, Quinn, along with the New York Police Department, arranged for security for Comrie for that evening. Though testifying that he felt “physically threatened” in view of the possibility that someone might take Plummer’s comments literally, Com-rie did not himself initiate steps for security, did not utilize security after that evening, and did not swear out a criminal or administrative complaint against Plummer.
Approximately one month later, Plum-mer received a letter of suspension from Quinn’s chief of staff. The letter instructed Plummer to agree to refrain from engaging in disruptive conduct and from using “threatening, intimidating, harassing, obscene or abusive language toward any Council Member.” She received another letter soon after filing this suit, asserting similar but narrower conditions. Plummer refused to sign both letters for three reasons: (1) she did not think her actions merited suspension, (2) she did not think Quinn had the authority to discipline her, and (3) she believed that Quinn’s actions were motivated by racism. As result, Quinn’s chief of staff terminated Plum-mer’s employment at the Council and Plummer brought the present lawsuit asserting various federal and state constitutional claims. In due course, Quinn filed a motion for summary judgment, which the district court granted in part, but denied as to Plummer’s First Amendment claim and with regards to qualified immunity. It is that denial of qualified immunity that we address in this appeal.
“Qualified immunity protects officials from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.” Gilles v. Repicky, 511 F.3d 239, 243 (2d Cir.2007) (quotation marks and citations omitted). This inquiry normally proceeds in two steps. See Pearson v. Callahan, — U.S. —, —, 129 S.Ct. 808, 813, 172 L.Ed.2d 565 (2009) (holding that two-step sequence is no longer “an inflexible requirement”). Accordingly, we first decide whether the facts that Plum-mer has alleged make out a violation of her First Amendment rights and if we decide that question in the affirmative, second, whether this right was “clearly established” at the time of Quinn’s alleged misconduct. Id. at 815-16.
Determining whether the facts that Plummer has alleged make out a violation of her First Amendment rights itself involves two inquiries. The first inquiry mandates that Plummer show that: (1) she was speaking as a citizen on matters of public concern rather than as an employee on matters of personal interest, (2) suffered an adverse employment action, and (3) the speech was at least a substantial or motivating factor in the adverse employment action. See Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir.2003). Appellants do not contest that Plummer has met the second and third prongs, and we assume, for the purposes of deciding this appeal, that she has met the first. See Garcetti v. Ceballos, 547 U.S. 410, 423-24, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006) (stating that First Amendment is implicated where public employees make public statements outside the course of performing their official duties); Sheppard v. Beerman, 94 F.3d 823, 829 (2d Cir.1996) (“[T]he First Amendment protects the eloquent and insolent alike.”).
On the second inquiry, the burden shifts to the employer to justify its adverse employment action, and it may do so by *574 showing that the employee’s “speech ... disrupted Council] activities and such disruption is sufficient to outweigh the First Amendment value of [her] speech.” Locurto v. Safir, 264 F.3d 154, 166 (2d Cir.2001) (quotation marks omitted); see also Jeffries v. Harleston, 52 F.8d 9, 13 (2d Cir.1995). In balancing disruption against an employee’s right to free speech, we do not consider the statements at issue “in a vacuum,” Rankin v. McPherson, 483 U.S. 378, 388, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987), but rather we take account of the “context in which the dispute arose,” id,., as well as “the nature of the employee’s responsibilities” since “[t]he level of protection afforded to an employee’s activities will vary with the amount of authority and public accountability the employee’s position entails.” Melzer v. Bd. of Educ., 336 F.3d 185, 197 (2d Cir.2003). In other words, “[a] position requiring ... public contact lessens the public employer’s burden in firing an employee for expression that offends the employer.” Id.; see also Rankin, 483 U.S. at 390-91, 107 S.Ct. 2891 (stating that where a public official plays a “public contact role,” the “burden of caution ... with respect to the words [she] speak[s]” will be greater). Justifications for an employer’s adverse employment action “may include such considerations as ... preventing disruption of operations, and avoiding having the judgment and professionalism of the agency brought into serious disrepute.” Piscottano v. Murphy, 511 F.3d 247, 271 (2d Cir.2007); see also Rankin, 483 U.S. at 389, 107 S.Ct. 2891 (indicating that “danger” that employee “discredited the office by making her statement in public” is factor to consider in balancing test).
We now turn to apply these standards to the dispute before us. We first recognize that appellants have a somewhat lesser burden in view of the fact that Plummer, as chief of staff to a councilmember, is a higher-level employee with a “public contact role.” With that in mind, our examination of the record reveals that at least two types of disruption resulted from Plummer’s “assassination” comments.[2] *575 First, Quinn arranged for security for Comrie, reasonably fearing — in view of the contentious context within which Plummer made her comments and the 2003 murder of a councilmember — that Plummer’s comments might be taken literally. Second, Plummer’s comments were the subject of negative media coverage, creating the danger that Plummer discredited the Council and brought it into disrepute. The First Amendment does not require employers to sit idly by when an employee engenders such concerns. In view of these two incidents of “disruption,” taken together, and because we conclude that there is no genuine issue as to whether Quinn’s actions were taken in retaliation for Plummer’s speech, see Jeffries, 52 F.3d at 13, we decide that appellants have met their burden of showing disruption that outweighs Plummer’s interest in free speech.[3]
For these reasons, we hold that Plum-mer’s First Amendment rights were not violated and enter summary judgment for Quinn and the City of New York. We REVERSE the judgment of the district court as to (1) the denial of qualified immunity with respect to Plummer’s First Amendment claim against Quinn, i.e., Plummer’s First Amendment rights were not violated even according to her version of events, and (2) the denial of summary judgment with respect to Plummer’s First Amendment claim against the City of New York, and REMAND for dismissal of the entire action. Upon dismissal of this action by the district court, Plummer may appeal only the district court’s rulings on her federal and state due process and equal protection claims.

. In their briefs, appellants point to Plum-mer’s gasp and statement of "wow” during a January 2007 joint hearing as additional proof of disruption. We doubt that this incident would qualify as disruptive, but in any event, do not consider it for the purposes of this appeal in view of the fact that it was not referenced in Plummer’s suspension and discharge letters.

. Our assessment of disruption is not based on whether the "plaintiffs evidence was sufficient to create a jury issue on the facts relevant to the defendant’s immunity defense." Salim v. Proulx, 93 F.3d 86, 91 (2d Cir.1996); see also Tellier v. Fields, 280 F.3d 69, 78 (2d Cir.2000) ("The Supreme Court’s decisions in Johnson v. Jones, 515 U.S. 304, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995), and Behrens v. Pelletier, 516 U.S. 299, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996), establish that the issue of whether the plaintiff has offered sufficient evidence to support a finding that particular conduct occurred is not immediately appeal-able.” (quotation marks and citations omitted)). Thus, we do not disturb the district court's findings that issues of material fact remain as to whether Plummer caused disruption by virtue of: (1) her May 30, 2007 meeting comments; (2) the effect of the assassination comments on Comrie; and (3) the meetings held by Quinn regarding the various incidents. Similarly, we do not disturb the district court’s assessment regarding whether there are issues of material fact as to whether Plummer's actions were potentially disruptive by virtue of: (1) impairment of discipline by superiors; (2) impairment of harmony between co-workers; (3) interference with Plummer’s job responsibilities requiring close working relationships; or (4) Plummer's perception as a dangerous employee. Nonetheless, as explained below, facts that Plummer admits and fails to challenge on appeal are sufficient to establish that Plummer "disu-rupt[ed Council] activities,” Locurto, 264 F.3d at 166, even setting aside these factual issues. See Salim, 93 F.3d at 90 ("Thus, as long as the defendant can support an immunity defense on ... the plaintiff’s version of the facts that the district judge deemed available for jury resolution, an interlocutory appeal is available to assert that an immunity defense is established as a matter of law.”); Skehan, 465 F.3d at 105 ("[W]e may resolve whether, as a matter of law, the defendants are entitled to qualified immunity ... because, on the facts assumed for the purposes of appeal, the defendants’ conduct did not constitute a violation of a constitutional right.”).

. Given this conclusion, i.e., that Plummer’s First Amendment rights were not violated because of the undisputed disruption caused by her actions, we need not address Plummer s argument that appellees' actions were ultra vires.