115 F.3d 111
 Melody MARTINEZ, Plaintiff-Appellee, Cross-Appellant,
v.
CITY OF SCHENECTADY, Daniel R. O'Connor, James Maloney,
Robert Relyea, Edward Galligan, Estate of Dennis A.
Gregoire, deceased, late of Albany County, State of New
York, by his executor Daniel A. Gregoire,
Defendants-Appellants, Cross-Appellees.
 Nos. 739, 869, Dockets 96-7784, 96-7818.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 21, 1997.
Decided May 13, 1997.
 
 Jerome K. Frost, Schenectady, NY (Law Offices of Jerome K. Frost), for Plaintiff-Appellee, Cross-Appellant.
 L. John Van Norden, Schenectady, NY (City of Schenectady, Corporation Counsel), for Defendants-Appellants, Cross-Appellees.
 Before: NEWMAN, Chief Judge, McLAUGHLIN, Circuit Judge; and OWEN, District Judge.*
 McLAUGHLIN, Circuit Judge:
 
 
 1
 Melody Martinez seeks damages under 42 U.S.C. § 1983 from the City of Schenectady and Schenectady police officers Daniel O'Connor, (the estate of) Dennis Gregoire, James Maloney, Robert Relyea and Edward Galligan (collectively "the officers" or "the police") for allegedly violating her constitutional rights. Martinez also seeks recovery under New York tort law.
 
 Background
 
 2
 Many of the facts are not substantially in dispute. To the extent that the parties disagree, we include here the facts viewed in the light most favorable to plaintiff-appellee.
 
 
 3
 A confidential informant told defendant Officer Galligan that she could purchase cocaine from Martinez.[1] The Schenectady police had earlier received information about drug sales at Martinez's address, see People v. Martinez, 80 N.Y.2d 549, 592 N.Y.S.2d 628, 629, 607 N.E.2d 775 (1992), and it was arranged that the informant go to Martinez's apartment and attempt to obtain drugs.
 
 
 4
 The informant left the police station. She returned thirty to sixty minutes later with 7 grams of cocaine she said she had gotten from Martinez for a payment to be made at a later date, or, as the defendants-appellants put it, "on consignment." Unfortunately, the police did not monitor the drug transaction, did not record it, and did not place the informant under surveillance after she left the police station.
 
 
 5
 Apparently realizing that this "uncontrolled" transaction might not support a warrant to search Martinez's apartment, the police directed the informant the following day to call Martinez, either to arrange another drug transaction, or, at least, to confirm that the first transaction had taken place.
 
 
 6
 Under the supervision of defendant Gregoire, and after consultation with defendants Galligan, O'Connor, Relyea, and Maloney, the officers succeeded in recording this conversation:
 
 
 7
 Martinez: Hello.
 
 
 8
 Informant: Hello, Melody?
 
 
 9
 Martinez: Yah.
 
 
 10
 Informant: Hey, what's up?
 
 
 11
 Martinez: Nothin' much, by three.
 
 
 12
 Informant: Three?
 
 
 13
 Martinez: Uh huh.
 
 
 14
 Informant: Wow! That long?
 
 
 15
 Martinez: Yea, 'cuz they're on their way right now.
 
 
 16
 Informant: Yea?
 
 
 17
 Martinez: They just finished calling me.
 
 
 18
 Informant: Okay.
 
 
 19
 Martinez: You got any money for me?
 
 
 20
 Informant: Ummmm, not yet.
 
 
 21
 Martinez: When you come to get, pick something up?
 
 
 22
 Informant: Yeh, no problem.
 
 
 23
 Martinez: Okay, bye, bye.
 
 
 24
 Informant: Okay mon.
 
 
 25
 Martinez: Bye.
 
 
 26
 Later that day, the officers went to a local police court justice for a warrant to search Martinez's apartment. The warrant application, which was signed by Gregoire, included two affidavits by the confidential informant and an affidavit by Galligan. The application misled the judge into believing that the initial drug transaction between Martinez and the informant was "controlled," when, as already stated, it was not. The informant was not brought before the court.
 
 
 27
 Galligan's affidavit stated that "informant went to [Martinez's address] and entered the rear apartment and spoke with Melody [Martinez.] Informant told Melody I need some cocaine and was then handed a plastic bag containing a white powder." This statement failed to disclose that, because the buy was not controlled, Galligan lacked a solid basis to know that the informant had obtained the drugs from Martinez.
 
 
 28
 Although the informant's affidavit mentioned that there was a recorded phone conversation, a transcript of that brief phone call was not included in the application, ostensibly because the officers had determined that the transcript would have provided little, if any, support for their application for a warrant.
 
 
 29
 The police court justice issued a search warrant. During the search of Martinez's home early next morning, the police found four ounces of cocaine in a dresser.
 
 
 30
 Martinez was arrested and indicted in state court for unlawful possession of a controlled substance in violation of New York Penal Law § 220.21(1). She was convicted and sentenced to fifteen years to life in prison.
 
 
 31
 Martinez appealed her conviction to the New York Supreme Court, Appellate Division, Third Department. The Appellate Division rejected her contention that the search warrant application was insufficient to establish probable cause, and affirmed the conviction. People v. Martinez, 169 A.D.2d 340, 572 N.Y.S.2d 946, 948 (1991). In December 1992, however, the New York Court of Appeals reversed the conviction, holding that "as a matter of State constitutional law ... the probable cause necessary for the issuance of a search warrant is lacking where the application for a search warrant is supported by the affidavit of a confidential informant who has not been questioned by the issuing court and whose reliability has not been established." People v. Martinez, 80 N.Y.2d 549, 592 N.Y.S.2d 628, 607 N.E.2d 775 (1992).
 
 
 32
 After serving about four years in prison, Martinez filed the instant action under 42 U.S.C. § 1983, as well as pendent tort claims under New York law. Ruling on motions and cross motions for summary judgment, the district court (Cholakis, J.) held that "plaintiff has failed to provide any support for her claim that defendant City [of Schenectady] has a policy or practice as to wrongfully obtaining search warrants, or to support a claim for negligent hiring, training, or supervision of police officers," and granted the City's motion for summary judgment on Martinez's § 1983 claim.
 
 
 33
 The district court, however, denied the individual officers' motion for summary judgment on the ground of qualified immunity. The district court held that "outstanding questions of material fact" precluded a finding that the defendants have qualified immunity. The officers then filed this appeal. Martinez cross-appealed, invoking the doctrine of pendent appellate jurisdiction, and seeking reversal of the district court's denial of her summary judgment motion.
 
 Discussion
 1. Appellate Jurisdiction
 
 34
 The officers appeal the district court's denial of their motion for summary judgment. An order denying summary judgment is not usually an appealable "final decision" within the meaning of 28 U.S.C. § 1291 (1988). Mitchell v. Forsyth, 472 U.S. 511, 524, 105 S.Ct. 2806, 2814, 86 L.Ed.2d 411 (1985); Jemmott v. Coughlin, 85 F.3d 61, 66 (2d Cir.1996). But there are exceptions when the doctrine of qualified immunity is invoked. Salim v. Proulx, 93 F.3d 86, 89 (2d Cir.1996). An order denying summary judgment on the ground of qualified immunity "as a matter of law" is appealable, Mitchell, 472 U.S. at 530, 105 S.Ct. at 2817-18, but if the district court "has ruled that adjudication of the immunity defense requires resolution of genuinely disputed questions of material fact," Golino v. City of New Haven, 950 F.2d 864, 868 (2d Cir.1991), the order remains unappealable.
 
 
 35
 Here, the district court unambiguously stated that questions of fact prevented a ruling that the officers are entitled to qualified immunity. The district court, however, never specified exactly what those fact questions were. Simply declaring that genuine issues of fact exist is not sufficient, in and of itself, to prevent an appeal. Behrens v. Pelletier, --- U.S. ----, ----, 116 S.Ct. 834, 842, 133 L.Ed.2d 773 (1996); Salim, 93 F.3d at 90 ("Behrens laid to rest any possibility that a district court's mere assertion that disputed factual issues existed was enough to preclude an immediate appeal.").
 
 In Salim, we stated:
 
 36
 [A]s long as the defendant can support an immunity defense on ... the plaintiff's version of the facts ... an interlocutory appeal is available to assert that an immunity defense is established.... Usually, the fact-related issue that will be raised on an interlocutory appeal is whether it was reasonable for the defendant to believe that his action did not violate clearly established law. See e.g., Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034 [3039-40], 97 L.Ed.2d 523 (1987); Robison v. Via, 821 F.2d 913, 921 (2d Cir.1987).
 
 
 37
 Salim, 93 F.3d at 86; see also Brown v. City of Oneonta, 106 F.3d 1125, 1129 (2d Cir.1997).
 
 
 38
 Thus, we have jurisdiction to determine whether, assuming that Martinez's version of the facts is correct, the officers are entitled to qualified immunity.
 
 2. Qualified Immunity
 
 39
 "As government officials performing discretionary functions, the defendants enjoy a qualified immunity that shields them from personal liability for damages under section 1983 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,' Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); Zavaro v. Coughlin, 970 F.2d 1148, 1153 (2d Cir.1992), or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights, see Anderson v. Creighton, 483 U.S. 635, 638-39, 107 S.Ct. 3034, 3038-39, 97 L.Ed.2d 523 (1987); Oliveira v. Mayer, 23 F.3d 642, 648 (2d Cir.1994) [, cert. denied, 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995) ]." Velardi v. Walsh, 40 F.3d 569, 573 (2d Cir.1994); see also Brown v. City of Oneonta, 106 F.3d at 1130-31.
 
 
 40
 Normally, the issuance of a search warrant (which depends, of course, on a finding of probable cause) creates a presumption that it was objectively reasonable for the officers to believe that the search was supported by probable cause. Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir.1991) (citing United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965)).
 
 
 41
 Here, however, Martinez alleges (and we assume as true) that in order to obtain the warrant the officers misled the issuing judge into believing that a "controlled buy" had taken place, when, in fact, the "buy" was not "controlled" at all.[2] Martinez adds that the officers deliberately withheld from the judge a transcript of the recorded telephone call because they feared that the conversation was insufficient to establish a drug transaction.
 
 
 42
 As we stated in Soares v. Connecticut, 8 F.3d 917 (2d Cir.1993):
 
 
 43
 It is settled that a person has a clearly established right not to be arrested or prosecuted without probable cause. A plaintiff can demonstrate that this right was violated where the officer ... "knowingly and intentionally, or with reckless disregard for the truth, made a false statement ..." or omitted material information, and that such false or omitted information was "necessary to the finding of probable cause."
 
 
 44
 In reviewing such cases on qualified immunity motions, a court should put aside allegedly false material, supply any omitted information, and then determine whether the contents of the "corrected affidavit" would have supported a finding of probable cause.
 
 
 45
 Id. at 920 (citations omitted); Cartier v. Lussier, 955 F.2d 841, 845 (2d Cir.1992). Summary relief must be granted "if the affidavit accompanying the warrant is sufficient, after correcting for material misstatements or omissions, to support a reasonable officer's belief that probable cause existed." Magnotti v. Kuntz, 918 F.2d 364, 368 (2d Cir.1990).
 
 
 46
 The "corrected affidavits" doctrine, therefore, requires us to examine all the information the officers actually possessed when they applied for the search warrant. As we stated in United States v. Smith:
 
 
 47
 In determining what constitutes probable cause to support a search warrant when the warrant is based upon information obtained through the use of a confidential informant, courts assess the information by examining the "totality of the circumstances" bearing upon its reliability ... [T]his approach envisions probable cause as a "fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules."
 
 
 48
 United States v. Smith, 9 F.3d 1007, 1012 (2d Cir. 1993) (citations omitted) (quoting Illinois v. Gates, 462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983)).
 
 
 49
 The police received an apparently unsolicited offer from the informant to obtain drugs from Martinez. The officers already knew about drug sales from Martinez's address, lending further credibility to the informant's claim.
 
 
 50
 The informant then left the police station to go to Martinez's apartment, and returned a short time later with cocaine. The police, however, did not monitor or "control" this transaction, and, as such, this "buy," in and of itself, might not have been enough to establish probable cause.
 
 
 51
 The recorded phone conversation, however, contributes substantially to the probable cause determination. From the conversation it is perfectly obvious that the informant and Martinez were well-acquainted. It is also evident that they had recently engaged in some type of dealing, because, with scant preliminaries, they address when the informant will bring money to Martinez, and the expectation that the informant is going to "pick something up" from Martinez.
 
 
 52
 While it is concededly possible that they were discussing something other than drugs, the conversation, in combination with the previous report of drug sales at Martinez's address, and the informant's claim recently to have obtained drugs from Martinez--the "totality of the circumstances"--certainly made it reasonable for the officers to conclude that Martinez and the informant were discussing drugs, and, moreover, that Martinez was dealing drugs.
 
 
 53
 We conclude that the officers "had reasonable grounds to believe probable cause supported the warrant." Magnotti, 918 F.2d at 366. The officers are therefore entitled to qualified immunity from Martinez's section 1983 claim. We note that the point decided by the New York Court of Appeals--that the warrant was issued in contravention of the New York State Constitution--is an entirely different question from the issue whether it was objectively reasonable for the officers to believe they were violating clearly established federal rights.
 
 
 54
 The district court's order denying the defendants' motion for summary judgment on the ground of qualified immunity is reversed. We deny Martinez's request that we exercise pendent appellate jurisdiction to hear her appeal from the district court's denial of her motion for summary judgment, and dismiss her appeal. This case is remanded to the district court for entry of an order granting defendants' motion for summary judgment. See Ying Jing Gan v. City of New York, 996 F.2d 522, 537 (2d Cir.1993); Magnotti v. Kuntz, 918 F.2d at 368.
 
 
 
 *
 Hon. Richard Owen, of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 The police initially contacted the informant to question her about a shooting in which her husband was suspected. Ostensibly to curry favor with the police, the informant volunteered information about Martinez
 
 
 [2]
 Although only Galligan signed an affidavit, Martinez asserts that all of the defendants knew that the warrant application was misleading