Jody FABRIKANT and Russell
A. Schindler, Plaintiff,

v.

Christine FRENCH; William DeRidder;
Hector L. Mejias, Jr.; John Spinato;
Catherine Palmer–Wemp; Walter
Sasse; Christina Khuly; David Stark;
Diane Stark; Ulster County Society
for the Prevention of Cruelty to Ani-
mals; Bradley Knee; Avery Smith;
Laraine Caliri; and Thomas Nace, De-
fendants.

No. 1:03–CV–1289.

United States District Court,
N.D. New York.

July 30, 2004.

Jody Fabrikant, Kerhonkson, NY, for Plaintiff, Pro Se.

Russell A. Schindler, NY, Kingston, for Plaintiff, Pro Se.

Young, Sommer Law Firm, Albany, NY (Dean S. Summer, James A. Muscato, of counsel), for Defendants (except Nace),

Cook, Tucker Law Firm, Kingston, NY (Robert E. Netter, of counsel), for Defendant Nace.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

Plaintiffs Jody Fabrikant ("Fabrikant" or "plaintiff"), an individual who owned a variety of animals, and Russell A. Schindler ("Schindler"), Fabrikant's attorney in the criminal action against her, commenced the instant action against defendants:

1. Christine French ("French"), the Executive Director of the U.C.S.P.C.A.;

2. William DeRidder ("DeRidder"), the operations manager at the U.C.S.P.C.A.;

3. Hector L. Mejias, Jr. ("Mejias"), an employee of the U.C.S.P.C.A.;

4. John Spinato ("Spinato"), an authorized peace officer employed by the U.C.S.P.C.A.;

5. Catherine Palmer–Wemp ("Palmer–Wemp"), an employee of the U.C.S.P.C.A.;

6. Christina Khuly ("Khuly"), an individual who witnessed the alleged animal cruelty;

7. David Stark, Diane Stark (collectively "the Starks"), individuals who provided allegedly false information regarding Fabrikant's animals to the U.C.S.P.C.A.;

8. Ulster County Society for the Prevention of Cruelty to Animals ("U.C.S.P.C.A."), a private, not-for-profit organization that works to prevent the cruelty to animals;

9. Bradley Knee ("Knee"), a veterinarian under contract with U.C.S.P.C.A.;

10. Avery Smith ("Smith"), a veterinarian under contract with U.C.S.P.C.A.;
11. Laraine Caliri ("Caliri"), a veterinarian under contract with U.C.S.P.C.A.;
12. Walter Sasse ("Sasse")[1], an authorized peace officer employed by the U.C.S.P.C.A.; and
13. Deputy Thomas Nace ("Deputy Nace")[2], a deputy sheriff at the Ulster County Sheriff's office who detained Fabrikant in his vehicle.

Plaintiffs bring this action pursuant to the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, as well as pursuant to 42 U.S.C. §§ 1983 and 1988. Plaintiffs seek to impose personal liability upon defendants for actions the defendants allegedly took under color of state law, which purportedly deprived plaintiffs of various Constitutional rights, including freedom of speech, the presumption of innocence, right to counsel, the right to be free from unreasonable searches and seizures, and due process of law. Fabrikant and Schindler also bring state law causes of action for malicious prosecution, libel and state constitutional tort.

Defendants (except Sasse and Deputy Nace) move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the federal causes of action for failure to state a claim and alternatively, based upon qualified immunity. Plaintiffs oppose. The motion was submitted for decision without oral argument.

## II. FACTS

Fabrikant, a self proclaimed "advocat[e] of alternative dog rescue organizations," worked prior to this incident with Spinato, an authorized peace officer hired by U.C.S.P.C.A., on the investigation of animal cruelty charges in reference to an outside individual. Fabrikant informed Spinato that she would no longer cooperate in the investigation because the individual had threatened Fabrikant and her animals.

From the end of August 2001, until March 2002, Fabrikant owned a variety of animals. She owned nine Great Pyranees/Basenji mix puppies, along with various other dogs and a cat. During the months of November 2001, to February 2002, she placed advertisements in order to find adoptive homes for her puppies. Khuly, an individual unrelated to U.C.S.P.C.A., contacted Fabrikant regarding the puppies and came to Fabrikant's home to view them. Fabrikant alleges that she concocted an elaborate scheme to obtain possession of the puppies, but she declined to give her any of them. She alleges that Khuly responded by contacting the U.C.S.P.C.A. and Spinato.

Fabrikant alleges that the Starks also conspired with the U.C.S.P.C.A. and Spinato. Fabrikant claims that the Starks knew her animals were under the care of a veterinarian, but they provided false testimony to U.C.S.P.C.A. and Spinato.

Fabrikant alleges that based on the false supporting depositions of the Starks, Khuly, Spinato, and Sasse, another authorized peace officer employed by U.C.S.P.C.A., a search warrant was obtained for Fabrikant's residence. Plaintiff also argues that the Town of Marbletown Town Justice who issued the warrant did not have geographi-

---

**1.** Movants claim that Sasse has not been served. (*See* Memoranda of Law, p 1 fn 1). However, the docket reflects that Sasse was served on October 30, 2003. (*See* Ack. of Serv. Docket No. 3.)

**2.** A motion to dismiss was not made on behalf of Deputy Nace. He filed and served an answer with cross claims against the other defendants on December 15, 2003. (Doc. No. 6).

cal jurisdiction to do so, since Fabrikant's residence was in the Town of Rochester.

Armed with the search warrant, Spinato; Sasse; Palmer–Wemp, an employee of U.C.S.P.C.A.; and DeRidder, the operations manager at U.C.S.P.C.A., searched Fabrikant's home on March 2, 2002, and seized thirteen of her animals, including all nine of the puppies. Spinato arrested and handcuffed Fabrikant and confined her to Deputy Nace's vehicle for one to two hours. Spinato filed five accusatory instruments detailing charges of animal cruelty against her. She was arraigned and released on her own recognizance.

On March 14, 2002, the veterinarians, Knee, Smith and Caliri, under contract with U.C.S.P.C.A., examined Fabrikant's animals that were seized from her home. Allegedly French, the Executive Director of the U.C.S.P.C.A., and DeRidder authorized the veterinarians to spay and neuter all of plaintiff's nine puppies and surgically remove one of the hind dew claws of one of the puppies that was going to a foster home during the pendency of the criminal action against Fabrikant.

On October 24, 2002, prior to jury selection at Fabrikant's criminal trial, one of the charges pertaining to plaintiff's rottweiler was dismissed "in furtherance of justice." The Town Justice of Rochester granted her motion to return the rottweiler to her care. The trial on the remaining charges proceeded, but on October 25, 2002, the Justice declared a mistrial.

Three days later, Fabrikant and her attorney in the criminal action, Schindler, went to the facility of U.C.S.P.C.A. to retrieve the rottweiler. Mejias, an employee of U.C.S.P.C.A., informed them that he was told a mistrial was granted and he would not release any animals to her. Schindler explained to Mejias that the rottweiler could be released. He then telephoned the Assistant District Attorney who prosecuted the case to confirm this fact. Mejias refused to speak on the phone. Rather, he went into his office, locked the door, and telephoned the police.

Plaintiffs allege that on October 30, 2003, French and DeRidder were informed about the encounter between Mejias and plaintiffs. Plaintiffs allege that French and DeRidder forced Mejias, under threat of termination of his employment, to sign a false document "alleging that Plaintiffs had identified Plaintiff, Russell A. Schindler, as 'Donald Williams' the Ulster County District Attorney." Mejias signed a supporting deposition accusing plaintiffs of criminal impersonation.

Almost a year later, on October 16, 2003, after a new trial, Fabrikant was found not guilty on all remaining animal cruelty charges. Her animals were held at U.C.S.P.C.A. for nineteen months. Defendants' claim in their reply memorandum that Fabrikant "abandoned" the animals after her trial.

## III. STANDARDS

### A. Motion to Dismiss

" 'A court may dismiss a complaint [under Fed.R.Civ.P. 12] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). In deciding a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz*, 534 U.S. at 508 n. 1, 122 S.Ct. 992; *see also Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994); *Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir.1995). Conclusory allegations that merely state the general legal conclusions necessary to prevail on the merits and are unsupported by factual averments will not be accepted

as true. *See, e.g., Clapp v. Greene*, 743 F.Supp. 273, 276 (S.D.N.Y.1990), *aff'd*, 930 F.2d 912 (2d Cir.1991). A complaint is sufficient if it gives the defendants fair notice of the plaintiff's claims, the grounds upon which they rest, and states claims upon which relief could be granted. *Swierkiewicz*, 534 U.S. at 514, 122 S.Ct. 992.

### B. *42 U.S.C. § 1983*

To establish a claim under § 1983, plaintiff must prove each of the following elements: (1) that the conduct complained of was committed by a person or persons acting under color of state law; (2) that this conduct deprived the plaintiff of rights secured by the Constitution of the United States; and (3) that this conduct was a proximate cause of the injuries and consequent damages sustained by the plaintiff. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); 42 U.S.C. § 1983.

## IV. *DISCUSSION*

### A. *Action Under Color of State Law*

Defendants argue that all claims brought under § 1983 must be dismissed because there is only a conclusory allegation of action under color of law. Plaintiffs argue to the contrary, that there is action under color of law. In order to act under color of state law, the defendant in a § 1983 action must have exercised power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). If a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, "that conduct [is] also action under color of state law and will support a suit under § 1983." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). "In such circumstances, the defendant's alleged infringement of the plaintiff's federal rights is 'fairly attributable to the State.'" *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982)).

"In certain instances the actions of private entities may be considered to be infused with 'state action' if those private parties are performing a function public or governmental in nature and which would have to be performed by the Government but for the activities of the private parties." *Kia P. v. McIntyre*, 235 F.3d 749, 756 (2d Cir.2000). In order to determine whether or not a corporate entity qualifies as a state actor, the following standard is used:

> only if (1) the government created the corporate entity by special law, (2) the government created the entity to further governmental objectives, and (3) the government retains 'permanent authority to appoint a majority the directors of the corporation' will the corporation be deemed a government entity for the purpose of the state action requirement.

*Hack v. President & Fellows of Yale Coll.*, 237 F.3d 81, 84 (2d Cir.2000) (quoting *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374, 400, 115 S.Ct. 961, 130 L.Ed.2d 902 (1999)).

In the instant case, the government did not create the U.C.S.P.C.A. by special law, the government did not create the entity to further governmental objectives, and the government does not retain permanent authority to appoint the majority of the directors of the corporation. The U.C.S.P.C.A. is a privately funded, not-for-profit organization without any New York State funding or oversight. Therefore, the U.C.S.P.C.A. is not deemed a government

entity for the purpose of the state action requirement.

■ Plaintiffs argue that the U.C.S.P.C.A. is a state actor because of the New York State statute which grants authority to peace officers of a duly incorporated society for the prevention of cruelty to animals to take certain actions to prevent animal cruelty. Plaintiffs argue the state authorizing statute converts the individual peace officers and the society itself into "state actors." This is a similar argument to the one the plaintiff in *Jackson v. Metropolitan Edison Co.* alleged: a private utility company that terminated her service because of nonpayment of bills, an action allowed by a provision of the company's general tariff filed with the Pennsylvania state utility commission, constituted state action "depriving her of property in violation of the Fourteenth Amendment's guarantee of due process of law." 419 U.S. 345, 348, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). The United States Supreme Court held that the Pennsylvania state utility commission that approved a request from a private utility company which permitted the company to terminate service upon nonpayment of bills after reasonable notice, did not constitute state action on the part of the private utility company for executing such terminations. *Id.* at 357, 95 S.Ct. 449. The private utility company was authorized by the state commission to terminate service for nonpayment of bills, but such authorization from the state did not convert the private utility company's conduct into state action. Similarly, under New York's Agriculture and Markets Law § 371, entitled "Powers of Peace Officers," any

> agent or officer of any duly incorporated society for the prevention of cruelty to animals may issue appearance tickets pursuant to section 150.20 of the criminal procedure law, summon or arrest, and bring before the court or magistrate

having jurisdiction, any person offending against any of the provisions of article twenty-six of the Agriculture and Markets Law. Any officer or agent of any of said societies may lawfully interfere to prevent the perpetration of any act of cruelty upon any animal in his presence

> . . . .

While New York law does authorize the agents of U.C.S.P.C.A. to prevent cruelty to animals, such authorized actions by the U.C.S.P.C.A. does not constitute acting under color of state law. The U.C.S.P.C.A. does not act on behalf of the state, it is not clothed with the authority of state law, the state had not ceded governmental functions to U.C.S.P.C.A., nor has it assumed control of the institution's policies and operations. The U.C.S.P.C.A. is authorized by the state legislature to take certain actions in order to prevent cruelty to animals. The actions the U.C.S.P.C.A. are authorized by the state to take are not converted into state action. The state authorizing statute does not convert private corporations into state actors. Just as the private Pennsylvania utility company was authorized by the state commission to take the action it did, the utility company's action was not automatically converted into state action. *Id.* Therefore, the U.C.S.P.C.A. is not a state actor and the requisite element of acting under color of law in order to establish a § 1983 claim is not met.

■ Likewise, the claims against Spinato, DeRidder, and Palmer–Wemp must be dismissed because the statute authorizing them to act as peace officers on behalf of the U.C.S.P.C.A. does not make their action state action. A private defendant may be held liable only as a "willful participant in joint activity with the State or its agents." *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966). Since the U.C.S.P.C.A. is not a

state actor or an agent of the state, these individuals did not participate in any joint activity with the state. Thus, Spinato, DeRidder, and Palmer–Wemp, while acting on behalf of the U.C.S.P.C.A., did not act under color of law.[3]

■ Similarly, the claims against French and Mejias must also be dismissed as there is no action under color of law present to support a § 1983 claim. French, the executive director of the U.C.S.P.C.A., allegedly threatened Mejias, an employee, to file a false, sworn document stating that Schindler had identified himself as "Donald Williams" the Ulster County District Attorney, when Schindler and Fabrikant came to the U.C.S.P.C.A. facility to retrieve a rottweiler. Mejias did not return any animals to plaintiffs and called the police. Mejias signed the deposition accusing Schindler of criminal impersonation. Allegedly threatening an employee to sign a false document, signing a false document, and calling the police do not constitute acting under color of law. French and Mejias, through these actions, did not exercise power possessed by virtue of state law made possible only because they were clothed with the authority of state law. French and Mejias were employees of a private corporation, U.C.S.P.C.A., whose goal is to prevent cruelty to animals. Therefore, the claims against French and Mejias must be dismissed, since they did not act under color of law.

■ Further, the claims against Khuly and the Starks must also be dismissed because there is no state action present to support a § 1983 claim. Khuly, a witness to the alleged animal cruelty, went to Spinato and the U.C.S.P.C.A. and allegedly conspired with them to prosecute Fabri-

kant. The Starks alleged that Fabrikant's animals had illnesses and injuries which did not exist and that the animals did not receive treatment. Khuly and the Starks' actions of providing allegedly false information to the U.C.S.P.C.A. are not actions under color of state law because they are private citizens providing information to a private corporation. Therefore, the claims against Khuly and the Starks must be dismissed even if all of the allegations are true, because their actions do not constitute state action which is a necessary element to support a § 1983 claim.

■ Finally, the claims against veterinarians Knee, Smith, and Caliri must also be dismissed as there is no action under color of law present to support a § 1983 claim. The veterinarians have a contract with U.C.S.P.C.A. and treated Fabrikant's animals while they were housed at U.C.S.P.C.A. The veterinarians' actions of treating Fabrikant's animals while they were at the U.C.S.P.C.A. do not constitute state action, since they are private individuals who performed services under contract for a private corporation. *See Rendell–Baker v. Kohn*, 457 U.S. 830, 840–41, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (holding that acts of private contractors whose business depends primarily on contracts with the government do not become acts of the government by reason of their significant or even total engagement in performing public contracts.) Thus, the claims against the veterinarians must be dismissed for failure to establish that they acted under color of law.

■ Additionally, the claims against French, Mejias, Khuly, the Starks, Knee, Smith, and Caliri alleging conspiracy with U.C.S.P.C.A. must be dismissed because

---

**3.** Similarly, the resolution as to Spinato will also apply to Sasse, since they are both authorized peace officers employed by the U.C.S.P.C.A. who both assisted with the search of Fabrikant's home and the seizure of her animals. Accordingly, the claims against Sasse will be dismissed *sua sponte*.

there are not sufficient facts set forth in the complaint to establish that these defendants conspired against Fabrikant and acted in concert with the U.C.S.P.C.A. "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Spear v. Town of West Hartford,* 954 F.2d 63, 68 (2d Cir.1992). In the instant case, the complaint does not allege sufficient facts to support a conspiracy theory argument, but only concludes that the above named defendants all conspired against Fabrikant. These named defendants either provided information to the U.C.S.P.C.A., were employed by the U.C.S.P.C.A., or treated plaintiff's animals while at the U.C.S.P.C.A. Further, none of the defendants are alleged to have acted in concert with a state actor. The allegations in the complaint are conclusory, and there are no facts which support the allegation that these defendants conspired against Fabrikant either with each other or with some state actor.

### B. *Qualified Immunity*

█ Even assuming, without deciding, that Spinato, DeRidder and Palmer–Wemp did act under color of law, as plaintiff argues, they would be entitled to qualified immunity as "government officials" who assisted with the search of Fabrikant's house and the seizure of her animals.

█ The qualified immunity doctrine insulates a governmental official performing discretionary functions from liability so long as his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Eng v. Coughlin,* 858 F.2d

889, 895 (2d Cir.1988) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). The qualified immunity defense will not be overcome when the rights are ephemeral. *Eng,* 858 F.2d at 895. The defendants, acting in their official capacities, must have acted reasonably in order to be accorded qualified immunity. *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727; *Wyler v. United States,* 725 F.2d 156, 159 (2d Cir.1983).

█ "Whether an official protected by qualified immunity may be held personally liable for an alleged unlawful official act ... turns on the 'objective reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson,* 483 U.S. at 639, 107 S.Ct. 3034 (quoting *Harlow,* 457 U.S. at 818–19, 102 S.Ct. 2727); *Mozzochi v. Borden,* 959 F.2d 1174, 1177 (2d Cir.1992).[4] This does not mean, however, that for a plaintiff to remove the cloak of qualified immunity the very action taken by the defendant, under the circumstances confronting the defendant, must have previously been declared unlawful. *See Finnegan v. Fountain,* 915 F.2d 817, 823 (2d Cir.1990); *Neu v. Corcoran,* 869 F.2d 662, 665 (2d Cir.1989), *cert. denied,* 493 U.S. 816, 110 S.Ct. 66, 107 L.Ed.2d 33 (1989). Rather, the unlawfulness must be apparent in light of preexisting law. *Smith v. Coughlin,* 938 F.2d 19, 20 (2d Cir.1991). As such, the defense of qualified immunity "provides ample support to all but the plainly incompetent or those

---

4. "Thus even where the law and the scope of permissible official conduct are clearly established, the defense of qualified immunity will protect a government official if it was 'objec- tively reasonable' for him to believe his acts were lawful." *Cartier v. Lussier,* 955 F.2d 841, 844 (2d Cir.1992).

who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

■■■■ While the United States Constitution provides that each person has a constitutional right to be free from unreasonable searches and seizure, a warrant makes a seizure presumptively reasonable. *Martinez v. City of Schenectady,* 115 F.3d 111, 115 (2d Cir.1997). The conduct of defendants Spinato, DeRidder and Palmer–Wemp in searching Fabrikant's house and seizing some of her animals pursuant to a facially valid warrant does not constitute conduct that violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Eng,* 858 F.2d at 895. It was objectively reasonable for Spinato, DeRidder and Palmer–Wemp to search the home based upon the warrant because of their belief, supported by complaints from the public, that mistreatment of animals took place in Fabrikant's home. It was also objectively reasonable for Spinato, DeRidder, and Palmer–Wemp to seize the animals that were in apparent squalor, confined, and without food and water. The reasonableness of this search and seizure is supported by the state law authorizing Spinato, DeRidder, and Palmer–Wemp to take the very action which they took. Thus, even if these defendants were deemed state actors, they would be entitled to dismissal based upon qualified immunity.[5]

## V.  CONCLUSION

The claims against French, DeRidder, Mejias, Spinato, Palmer–Wemp, Khuly, the Starks, U.C.S.P.C.A., Knee, Smith, Caliri, and Sasse will be dismissed, because neither the U.C.S.P.C.A. nor the listed individual defendants acted under color of law.[6] The U.C.S.P.C.A. is a private corporation that is authorized by state statute to take actions in order to prevent the cruelty to animals. The requisite elements to bring a § 1983 claim are not met. Even assuming arguendo that the state-action element of a § 1983 claim was met, Spinato, DeRidder, Palmer–Wemp, and Sasse as "government officials" would be entitled to qualified immunity.

Given this resolution of federal claims, exercise of supplemental jurisdiction over the remaining state law claims against these defendants is declined. Finally, attorney's fees, expenses, and costs are not awarded to said defendants.

Accordingly, it is hereby

ORDERED that

1.  Defendants' (except Sasse and Nace) motion is GRANTED;

2.  The complaint as against defendants French, DeRidder, Mejias, Spinato, Palmer–Wemp, Khuly, the Starks, U.C.S.P.C.A., Knee, Smith and Caliri is DISMISSED;

3.  The complaint as against defendant Sasse and all cross claims by defendant Deputy Nace are DISMISSED, *sua sponte;*

4.  All state law causes of action against the above defendants are DISMISSED, without prejudice.

The Clerk is directed to enter judgment accordingly.

The only remaining causes of action are those against Deputy Nace.

IT IS SO ORDERED.

---

5. Again, this resolution would also apply to Sasse since he is in the exact same position as Spinato.

6. Therefore, the cross claims of Deputy Nace will also be dismissed, *sua sponte.*